## Anna Louise Garrett, Appellee, v. Robert Lee Garrett, Appellant.

### Gen. No. 5434.

DIVORCE—*when denied to both husband and wife.* The divorce law is for the relief of an oppressed party and the courts will not interfere in quarrels where both parties are guilty of reciprocal excesses and outrages; where each party has given a cause for divorce of the same statutory character neither can complain of the other.

Divorce. Appeal from the Circuit Court of Mercer county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed March 16, 1911.

CHURCH & CHURCH, for appellant.

W. J. GRAHAM and GEORGE W. WERTS, JR., for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Anna Louise Garrett, the appellee, filed a bill for divorce against her husband, Robert Lee Garrett (called generally Jeff. Garrett), in the Circuit Court of Mercer county. She alleged therein that she was an actual resident of Mercer county, and that she had conducted herself as a chaste and dutiful wife, but that her husband had been guilty of extreme and repeated cruelty to her, particularly on certain dates named, and that for more than two years prior thereto he had been guilty of habitual drunkenness; and she gave a statement of his property, and asked for a divorce, for the custody of their child, and for alimony. Appellant answered, denying that his wife was a resident of Mercer county; denying the charges of extreme and repeated cruelty, and of habitual drunkenness; denying that he had the amount of property alleged;

and charging that his wife had been guilty of extreme and repeated cruelty towards him, particularly on certain dates named; and also that she had been guilty of habitual drunkenness for more than two years prior to the filing of the bill. The cause was submitted to a jury on the issues whether the husband had been guilty of habitual drunkenness and extreme and repeated cruelty, as alleged in the bill, and whether the wife had been guilty of habitual drunkenness and extreme and repeated cruelty, as alleged in the answer, and whether she was a resident of Mercer county when she filed the bill. A verdict was returned finding all three issues in favor of the wife. A motion for a new trial was denied, and there was a decree granting her a divorce and the custody of the child and alimony and solicitor's fees. The husband prosecutes this appeal.

Appellant owned a farm in Mercer county, and he and his wife lived thereon. She went to Texas on a visit to her parents after he had rented the farm for one year from the following March. Afterwards he secured a lease for a single room in a house in the village of Alexis, a mile and a half from his farm. Alexis is on the county line between Mercer and Warren counties, and this room was in Warren county. Appellee returned from Texas, and she and her husband and child boarded with the tenant on the farm for a short time, and they then went to this room in Alexis and lived there ten days. Appellant removed some of his household goods to that room, but he also retained part of his household goods and part of his farming implements on the farm, and had the privilege from the tenant of keeping them there. The proof shows that he stated that he intended to keep his residence in the country and to vote there, because the taxes were lower there than in Alexis, and because he probably would return to the farm at the end of the rental year. At the end of ten days the wife and child went to Aledo, the county seat of Mercer county, and she

there consulted a solicitor and filed this bill. Service was had upon appellant in Mercer county. We are of opinion that the residence of appellant, and therefore of appellee, was still in Mercer county, and that the bill was properly filed there. We pass no opinion upon the question whether this could properly be submitted to the jury.

It will be assumed for the purpose of this opinion that the proof warranted the jury in finding that appellant had been guilty of extreme and repeated cruelty towards appellee, and that his use of intoxicating liquors during the two years preceding the filing of the bill was sufficient to justify the jury in finding that he had been guilty of habitual drunkenness for the space of two years, within the meaning of the statute in relation to divorce. We therefore need not detail the evidence of his misconduct. But the proof also showed that appellee had been guilty of extreme and repeated cruelty towards her husband. On one occasion when they were riding in a double seated carriage, with two friends, a husband and his wife, appellee became enraged at her husband and struck him in the mouth with her fist, so that his mouth bled, and then caught up a full bottle of beer and, according to the evidence of three witnesses, said to him, "You get in here, you son of a bitch, and behave yourself, or I will brain you," or words similar to those, or, according to her own version, "You dirty white livered cur, if you touch me I will lay you out like a dog." At another time, in their own home, she took a shovel about two feet long and hit him across the face and across the corner of one eye so severely that his eye was closed the next morning, and the whole side of his face and head was bruised, and his face remained swollen for about three weeks. She admits this blow with a shovel, and that it left an ugly deep mark, but she says that she did not intend to strike him in the face, but he threw up his hand and diverted the blow. At another time they had a quarrel at home, in which

she had possession of a loaded revolver, and, according to his evidence, threatened to kill him, and he had possession of an unloaded shot gun. She claims he was threatening her. He took the revolver away from her, but as he immediately unloaded it, the reasonable probabilities are that he was only disarming her to prevent her carrying out her threat of killing him. There is evidence of numerous other occasions when she struck him in the face with her fist and when she slapped him and threatened him. Some of these she denies, but the most serious events she admits, and the main difference between them is as to which one began or was responsible for the continuing of the quarrel which resulted in these cruelties by appellee towards her husband. She seems to have been ready to aggravate her husband. When he came home one day he met her and a hired man coming out of the barn. He asked what she had been doing. She told him it was "none of his damned business," or none of his business, and when he persisted in his inquiry she said they had been up in the hay mow. Afterwards appellant was satisfied that their errand was entirely innocent, but when she was angry she was willing to help make him think evil of her. She accuses him of using profane language in the presence of their child, but the proof is that they were each guilty of that offense. So, too, appellee has been in the habit of using beer and whiskey for years. She claims she began to use beer while nursing a child, but the proof shows she continued it and whiskey long after, and the clear preponderance of the evidence is that for several years she has frequently been tipsy, or has drank so much that it made her dizzy and she had to lie down, or was in such a condition that witnesses pronounced her intoxicated. She denies or mitigates most of these charges, but the preponderance of the evidence is against her, and according to it appellant and appellee have drunk beer and intoxicating liquor together fre-

quently ever since their marriage and many times during the last two years before this bill was filed. According to the preponderance of the evidence, it was frequently she who asked to have beer and liquor obtained and brought into the house. If this evidence against her stood alone on a bill filed by her husband, it would justify a divorce in his favor on account of her extreme and repeated cruelty and perhaps also on the charge of habitual drunkenness. We do not deem it proper to compare the enormity of the several offenses, and to determine whether the husband has been more cruel to his wife than she to him, or whether the husband has been intoxicated oftener than she, and if we find that the excesses of the husband have been greater than those of the wife, then decide her entitled to a divorce. The rule laid down in Duberstein v. Duberstein, 171 Ill. 133, must control in this case. It is there held that the law is for the relief of an oppressed party and that the courts will not interfere in quarrels where both parties are guilty of reciprocal excesses and outrages. Divorce is a remedy provided for an innocent party, and where each party has given a cause for divorce of the same statutory character neither can complain of the other. We feel bound to say here, as the court said there, that the parties are *in pari delicto,* and therefore must be left to themselves.

There is much discussion by counsel as to the justice or injustice of the allowance for alimony and solicitor's fees, in view of the embarrassed financial condition of appellant, and of his extreme ill health and inability to support himself. But as the allowances made must necessarily fall with the reversal of this decree we deem it unnecessary to discuss the evidence upon those subjects.

The decree is therefore reversed.

*Reversed.*